817 So.2d 390 (2002)
STATE of Louisiana
v.
Michael A. LEDESMA.
No. 01-KA-1413.
Court of Appeal of Louisiana, Fifth Circuit.
April 30, 2002.
*391 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Churita H. Hansell, *392 Frank Brindisi, Assistant District Attorneys, Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD, and WALTER J. ROTHSCHILD.
SOL GOTHARD, Judge.
Defendant, Michael Ledesma, was convicted of possession of cocaine in violation of La. R.S. 40:967 C, and was sentenced to five years of imprisonment at hard labor with credit for time served. The court recommended drug treatment during incarceration. Pursuant to a multiple bill, defendant admitted his status as a second offender. The trial court vacated the prior sentence, and re-sentenced the defendant as a second-felony offender to five years of imprisonment at hard labor with credit for time served. This appeal followed.

FACTS
On June 26, 1999, the Kenner Police Department received an anonymous complaint that an unknown male was lying on the lawn in front of a house at 2100 Iowa Street in Kenner. The dispatcher for the Police Department relayed the complaint to Officer Patrick Gallagher of the Kenner Police Street Patrol. Officer Gallagher, who was on routine patrol, drove to Iowa Street at approximately 6:21 p.m. that evening. As he reached the corner house at the intersection of Iowa and 20th Streets, the officer saw a male subject lying on his back in the grass. The subject was located on the south side of 2000 Iowa Street, facing 20th Street. The subject was wearing black jeans and a multi-colored shirt.
As Officer Gallagher approached on foot, he noticed that the subject had his eyes closed. Concerned that there might be a medical emergency, the officer shook the subject. The subject was unable to speak clearly and when the officer asked him questions, he responded by mumbling. The officer could not smell alcohol, although the subject's eyes were bloodshot and he appeared to be intoxicated. Officer Gallagher helped the subject to stand but he was unsteady on his feet. The subject walked two to three feet to Officer Gallagher's police unit. Officer Gallagher asked the subject a few questions, including one to ascertain if this was where he lived. Officer Gallagher was unable to discern the subject's responses, as they were mumbled. Officer Gallagher asked the subject for identification. The male subject responded by emptying the contents of his pockets onto the back of the police unit. In addition to the identification that indicated that the subject was Michael Ledesma, he also produced papers, a cigarette lighter, and a clear plastic bag containing what appeared to be crack cocaine. Officer Gallagher gathered up the items and then the officer placed Ledesma under arrest for disturbing the peace. Ledesma was taken to Kenner Police Headquarters, advised of his rights, and he executed a waiver of rights form. No statement was taken.
The contraband was turned over to Officer Blaine Donovan of the Kenner Police and he prepared a log for the evidence and placed it in a safe. On September 29, 1999, this evidence was delivered to Officer Edgar Dunn, a Crime Lab technician for the Jefferson Parish Sheriffs Office. Officer Dunn tested the substance, and it tested positive for crack cocaine in the amount of .21 grams.

ANALYSIS
In his first allegation of error, defendant contends that the trial court erred in refusing to grant a mistrial when the State made reference to defendant's post arrest *393 silence, during the direct examination of Officer Gallagher, and at the time of the closing arguments.
The State counters that the trial court acted correctly in that there was never a specific reference to the defendant's post arrest silence during the direct examination of Officer Gallagher. The State also contends that any reference made on the subject during closing arguments was in response to defendant's closing argument. Finally, the State argues that the reference, if any, was harmless.
In Doyle v. Ohio, 426 U.S. 610, 620, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that the use, for impeachment purposes, of petitioner's silence at the time of arrest and after receiving the Miranda warnings, violates the Due Process Clause of the Fourteenth Amendment. See also, Portuondo v. Agard, 529 U.S. 61, 74-75, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000).
However, it is not every mention of the defendant's post arrest silence that is prohibited by Doyle. As specified by the Louisiana Supreme Court, in State v. George, 95-0110 (La.10/16/95), 661 So.2d 975, 980, "Doyle condemns only `the use for impeachment purposes of (the defendant's) silence at the time of arrest and after Miranda warnings.'" The prosecutor may not use the fact of an accused's exercise of his constitutional right to remain silent, after he has been advised of this right, solely to ascribe a guilty meaning to his silence or to undermine, by inference, an exculpatory version related by the accused, for the first time at trial. State v. Arvie, 505 So.2d 44, 46 (La.1987).
In contrast, an oblique and obscure reference to the defendant's post arrest silence, where the examination did not stress the right to remain silent or attempt to elicit testimony regarding the defendant's failure to respond to police questioning does not constitute reversible error. State v. Mosley, 390 So.2d 1302, 1305-1306.
Therefore, where the State's line of questioning is permissible, when such questioning is an attempt to summarize the extent of the investigation and is not designed to exploit the defendant's failure to claim his innocence after his arrest in an effort to impeach his testimony or attack his defense. State v. George, 661 So.2d at 979-980.
Another exception to Doyle also exists when the evidence of post arrest silence is relevant to rebut a defense-raised assertion that the arresting officer failed to properly investigate, or that defendant actively cooperated with police when arrested. State v. Bell, 446 So.2d 1191, 1194 (La.1984).
This Court has additionally held that a brief reference to post arrest silence does not mandate either a mistrial or reversal where the trial as a whole was fairly conducted, the proof of guilt is strong, and the prosecution made no use of the silence for impeachment purposes. State v. Campbell, 97-369 (La.App. 5 Cir. 11/25/97), 703 So.2d 1358, 1361 (citing State v. Troulliet, 94-183 (La.App. 5 Cir. 9/14/94), 643 So.2d 1267).
In the present case, during direct examination of Officer Gallagher, the State questioned him regarding the sequence of events occurring from the time of the initial complaint through the time of the arrest and defendant's delivery to Police Headquarters. The prosecutor specifically asked the officer if defendant had explained why he was in possession of crack cocaine, and the officer responded that the defendant had not.
We find that the reference to the defendant's post arrest silence was indirect *394 and was not used to ascribe a guilty meaning to the silence nor for impeachment purposes. This line of questioning directed to the investigating officer appears, as in George, supra, designed to illicit from the officer a description of how the police investigation culminated. It was particularly relevant in this case because, during opening arguments, the defendant stressed the fact that he signed the waiver of rights form, understood his rights and indicated he wanted to give a statement, but the officers did not question him further. This case also falls within the Bell exception to Doyle (i.e., the evidence is relevant to rebut a defense-raised assertion that the arresting officer failed to properly investigate or that defendant actively cooperated with police when arrested). Accordingly, we find that the trial judge correctly denied the defendant's motion for a mistrial.
Defendant next argues that certain statements made by the prosecutor during closing argument (rebuttal) were an impermissible reference to defendant's post arrest silence and constitutes reversible error.
Defendant, in closing argument, argued that the State proved the existence of crack cocaine; it failed to prove defendant's knowing and intentional possession. In this regard, defendant stressed the fact that there was deficient police work, because although he was advised of his rights and waived the same, police never questioned him further to ascertain how he came into possession of the contraband. Additionally, he indicated that he was fully cooperative and he wanted to make a statement.
The State thereafter argued that the defendant was found in an intoxicated state with crack cocaine in his pocket and no one around. The State attempted to dispel the implication made by the defense, during its closing argument, that someone may have planted the drugs on him. In response to the defendant's assertion that he wanted to make a statement, the State argued that the defendant could have made his statement at anytime, and that not only did he not give his statement at the police station, he first indicated that he had wanted to make a statement one and one-half years later.
We find that the prosecutor's comments were made in answer to the defendant's allegations that he wanted to make a statement but was not afforded the opportunity by the police, and are, therefore, proper rebuttal. La.C.Cr.P. art. 774. Additionally, these remarks fall within the Bell exception to Doyle, as discussed supra. The Louisiana Supreme Court in Bell, 446 So.2d at 1193 (quoting from United States v. Fairchild, 505 F.2d 1378 (5 Cir.1975)), stated:
Assuming the law would have excluded from evidence Fairchild's silence had he not broached the subject of cooperation, once he did broach it the bar was lowered and he discarded the shield which the law had created to protect him.

(Emphasis as found in the original).
We find no merit to defendant's first allegation of error.
Defendant also assigns as error all patent errors. We have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and note the following errors.
At the time of the imposition of the original sentence and the multiple bill sentence, the trial judge informed the defendant that he had two years within which to apply for post-conviction relief. The instruction was incomplete because the trial judge did not advise the defendant that the *395 two years ran from the finality of sentence. LSA-C.Cr.P. art. 930.8. Thus we order the trial court to inform the defendant of this fact by sending written notice to defendant within ten days after the rendition of the appellate opinion and to file written proof in the record that defendant received the notice. State v. Boles, 99-662 (La.App. 5 Cir. 11/10/99), 750 So.2d 1059, 1062.
For the above discussed reasons, the defendant's conviction and sentence are affirmed. The matter is remanded for the trial court to inform the defendant of the delays for applying for post conviction relief.
AFFIRMED AND REMANDED.